UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM GRIFFIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 13 CV 8372 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| WELLS FARGO ADVISORS, LLC and | ) |
| KEVIN DAILEY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

William Griffis sued his former employer, Wells Fargo Advisors, LLC, and supervisor, Kevin Dailey, asserting claims for fraud in the inducement, intentional misrepresentation, tortious interference with business relations, and deceptive business practices. Defendants move to stay these proceedings and compel arbitration. For the reasons explained below, the motion is granted.

### I. Facts

On December 21, 2011, Wells Fargo hired Griffis as a financial advisor at its bank branch in Niles, Illinois. The bank offered to pay Griffis a "transition bonus" of $205,318, which was secured by a promissory note. The note established a monthly repayment plan of the bonus, but provided that if Griffis left Wells Fargo, the amount remaining on the promissory note would immediately become due and payable.

Soon after Griffis joined Wells Fargo, he found that the working conditions there were intolerable. He alleges that the light bulbs near his desk were burned out, the temperature in the office was "stiflingly hot," and his workspace lacked privacy. He further alleges that Wells

Fargo was unsupportive of him and at times "actively impeded his ability to earn a living." (ECF No. 1-1, ¶ 38.)

Griffis left Wells Fargo on September 13, 2013. Approximately two weeks later, Wells Fargo demanded that Griffis immediately repay the amount remaining on the promissory note. Griffis then filed this lawsuit against Wells Fargo and his former supervisor, Kevin Dailey. Griffis alleges that he was fraudulently induced to enter into his employment agreement with Wells Fargo and to sign the promissory note that secured his transition bonus. Specifically, he alleges that Wells Fargo, through Dailey, told Griffis before he started working that:

(i) Wells Fargo would provide Griffis with an "Integration Specialist" who would assist him in transitioning his financial advisory practice;

(ii) If Griffis joined Wells Fargo, there would be some existing business for Griffis to take over;

(iii) Griffis could transfer from one Wells Fargo bank branch to another non-bank branch at any time and could transfer his clients as well;

(iv) Wells Fargo was committed to the financial advisors program and that bankers and bank managers would refer a steady flow of business to him; and

(v) The bank managers were wholly dedicated to the financial advisors and that there was a robust incentive program in place to encourage referrals.

(ECF No. 1-1, ¶ 54.) Griffis alleges that Wells Fargo and Dailey knew these statements were false when they made them and that Griffis relied on these statements in agreeing to enter into his employment agreement and the terms of the promissory note.

Griffis further alleges that after he left the company, an agent of Wells Fargo sent letters to Griffis's former clients on Wells Fargo letterhead and signed Griffis's name. The letters recommended that the clients pursue an investment strategy plan with Wells Fargo. Griffis contends that by sending these letters, Wells Fargo tortiously interfered with his business relations and engaged in deceptive business practices.

## II. LEGAL STANDARD

The Supreme Court has described the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, as reflecting "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. __, 131 S. Ct. 1740, 1745 (2011) (citations and internal quotation marks omitted). To advance this policy, the FAA provides for stays of litigation in federal courts when an issue in the case is "referable to arbitration." *See* 9 U.S.C. § 3. If a contract includes an arbitration clause, the clause creates a presumption that the dispute should be arbitrated unless the party opposing arbitration can show that the clause is incapable of an interpretation that could cover the dispute. *See Wilson v. Palisades Collection, LLC*, No. 12 C 5460, 2012 WL 6692152, at *1 (N.D. Ill. Dec. 19, 2012). "'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . .'" *Stone v. Doerge*, 245 F. Supp. 2d 878, 881 (N.D. Ill. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)), *aff'd*, 328 F.3d 343 (7th Cir. 2003).

## III. ANALYSIS

Wells Fargo moves to compel arbitration pursuant to four agreements Griffis signed when he began working at Wells Fargo: an Offer Summary Agreement; a Form U4 Uniform Application for Securities Industry Registration or Transfer; a Promissory Note; and a Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, and Assignment of Inventions. The Form U4 contains the broadest arbitration clause of the four agreements. It provides as follows:

> 5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROS [Self-regulatory organizations] indicated in Section 4 (SRO REGISTRATION) as may be

amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(ECF No. 6-2, at ¶ 5.) The Financial Industry Regulatory Authority (FINRA) is one of the SROs listed in Section 4. FINRA Rule 13200 provides as follows:

> **13200. Required Arbitration**
>
> **(a) Generally**
>
> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
> - Members;
> - Members and Associated Persons; or
> - Associated Persons.
>
> **(b) Insurance Activities**
>
> Disputes arising out of the insurance business activities of a member that is also an insurance company are not required to be arbitrated under the Code.

FINRA Rule 13100 defines "Member" as "any broker or dealer admitted to membership in the FINRA, whether or not the membership has been terminated or cancelled . . . ." It is undisputed that Wells Fargo is a "Member" under this definition. Rule 13100 goes on to define an "Associated Person" as a "person associated with a member," which in turn is defined to include, as relevant here, "[a] natural person who is registered or has applied for registration under the Rules of FINRA." Additionally, "[f]or purposes of the [FINRA] Code, a person formerly associated with a member is a person associated with a member." FINRA Rule 13100(r).

Griffis does not dispute that his supervisor Kevin Dailey is an "Associated Person" under this definition. Nor does he dispute that he has been registered under FINRA's rules since 1987, including while he was employed by Wells Fargo. He argues, however, that FINRA's arbitration provision does not apply to his dispute with Wells Fargo because he "was merely a potential

4

employee at the time Kevin Dailey made misrepresentations to him and not an associated person." (ECF No. 15, at 10.)

Griffis's argument might have some appeal were Rule 13200 limited to disputes that arise during an associated person's term of employment. But Rule 13200 is broader than that—it requires arbitration "if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." The rule contains no express limitation on disputes arising before or after an associate person's term of employment with a member, and courts have construed Rule 13200 to require arbitration where a plaintiff's claims "involve his hiring, employment, and termination." *Lorbietzki v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 2:10-CV-01585-RLH, 2011 WL 855354, at *4 (D. Nev. Mar. 9, 2011) ("[T]hese allegations clearly fall within the scope of the parties' 'business activities' because they directly implicate some of the most fundamental aspects of [the plaintiff's] business relationship with [the defendant].").

Griffis cites no authority to the contrary. He argues that his case is "[s]imilar to . . . cases in which courts have held that 'banking advice [does] not give rise to a 'customer relationship' within the meaning of FINRA rules." (ECF No. 15, at 9 (citing *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 651 (2d Cir. 2011), *and Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164 (2d Cir. 2011)). Griffis does not develop this argument, so it is unclear why he believes that these cases are similar. It may be true that Dailey's alleged misrepresentations did not give rise to an "Associated Person-Member" relationship, but that is beside the point. Griffis's dispute is between an associated person and a member, and so under the terms of Rule 13200, it "must be arbitrated . . . if the dispute arises out of the business activities of [Wells Fargo] or [Griffis] . . . ."

To be sure, some courts have discussed the need to limit the scope of Rule 13200 to ensure that "arbitration will pertain to matters with some nexus to the activity actually regulated by FINRA." *Valentine Capital Asset Mgmt., Inc. v. Agahi*, 94 Cal. Rptr. 3d 526, 534 (Cal. Ct. App. 2009). As the court in *Agahi* reasoned:

> [A] variety of disputes, utterly unrelated to the securities industry, might arise between individuals who happen to be associated persons. For example, a registered representative might also be a real estate agent who sells a home to another person who happens to be a registered representative. Other registered representatives, engaged in the side business of collecting and selling art, might become embroiled in a dispute over the sale of a painting that one claims to be fake. These disputes would certainly arise out of the parties' business activities, but neither the parties nor FINRA would reasonably expect these private disputes to be appropriate for an arbitration established as part of the regulation of stock brokerage firms. . . . Without an appropriate limit on the concept of "business activities," FINRA would be forced to handle disputes outside its purpose and concerns, beyond the expertise of FINRA arbitrators, and beyond the reasonable expectations of the parties involved.

*Id.* at 533-34.

In *Agahi*, the plaintiff founded a company called Valentine Capital Asset Management, Inc. (VCAM), which employed the defendants. *Id.* at 528. He alleged that the defendants stole VCAM's trade secrets and then left the company to work at one of VCAM's competitors. *Id.* The defendants cross-claimed for slander and moved to compel arbitration under FINRA Rule 13200. *Id.* at 530. The plaintiff argued that he was not required to arbitrate his claims under FINRA's rules because VCAM was not a member under FINRA's rules. *See id.* at 533-34. Although Valentine was an associated person because of his affiliation with another FINRA Member, his claims against his former employees were unrelated to that company. *Id.* at 535.

The court held that the plaintiff was not required to arbitrate his dispute because it did not arise "out of the business activities of an individual *as* an associated person of a FINRA member." *Id.* at 534. Because there was "no allegation that any of the parties were acting for

6

any FINRA-member firm or as an associated person," the court found that Rule 13200 did not require arbitration of the plaintiff's claims. *Id.* at 535.

Here, by contrast, it is undisputed that Griffis acted for Wells Fargo and Dailey, who are FINRA members and associated persons, respectively. Interpreting Rule 13200 to cover Griffis's claims of intentional misrepresentation made during the hiring process would not require FINRA to arbitrate claims beyond its expertise. Had Dailey made the alleged misrepresentations while Griffis was employed by Wells Fargo, there would be no question that FINRA could arbitrate the dispute. That he made the alleged misrepresentations before Griffis was hired does not destroy the "nexus" between the dispute and activity traditionally regulated by FINRA.

Because Rule 13200 applies to Griffis's dispute, the dispute must be arbitrated if it "arises out of the business activities of a member or an associated person." Griffis does not directly address this aspect of Rule 13200 in his brief, but focuses instead on the language of a different arbitration provision found in his promissory note. That provision requires arbitration of "any disputes concerning your employment or termination of employment . . . with Wells Fargo . . . ." (ECF No. 6-3, ¶ 5.) Griffis contends that his dispute with Wells Fargo does not "arise out of" his employment because it "does not have its origin in [his] employment with Wells Fargo" but rather "in Kevin Dailey's misrepresentations, made prior to Plaintiff ever signing a single arbitration agreement." (ECF No. 15, at 5.) He argues that the dispute does not arise out of the "business activities" of Wells Fargo "[f]or the same reasons" that it does not arise out of Griffis's employment. (ECF No. 15, at 8.)

As an initial matter, the phrase "business activities" is "quite broad" and appears to be broader than the language of the promissory note. *Cf. Wachovia Bank*, 661 F.3d at 170

7

(construing identical language in FINRA Rule 12200 as "quite broad" in light of the narrow carve-out for insurance disputes). It is difficult to see how Wells Fargo's activities could not fall under the broad language of Rule 13200, as recruiting employees and soliciting clients is precisely what businesses do.

But even were the "business activities" requirement limited to disputes arising out of Griffis's employment, the court has little trouble concluding that his dispute satisfies that standard as well. The fraudulent-inducement and intentional-misrepresentation claims are premised on the allegation that the conditions of Griffis's employment were different than what he had been promised. The tortious-interference-with-business-relations and deceptive-business-practices claims are premised on the allegation that Wells Fargo improperly contacted Griffis's former clients. Griffis's argument that these claims do not "arise out of" his employment does not fairly characterize the nature of his allegations. Accordingly, the court concludes that Griffis's dispute with Wells Fargo and Dailey "arises out of" Wells Fargo's business activities. Thus, under FINRA Rule 13200, his dispute "must be arbitrated."

Finally, Griffis argues that because Dailey was not a signatory to any of the agreements, Dailey cannot move to compel arbitration of the intentional misrepresentation claim, which is asserted solely against Dailey in his personal capacity. To support this argument, Griffis relies on *Vukusich v. Comprehensive Accounting Corp.*, 501 N.E.2d 1332, 1333 (Ill. 1986). There, the plaintiffs entered into a franchise agreement with Comprehensive Accounting Corporation (CAC), which required arbitration of "[a]ny and all disputes or controversies, whether of law or fact, of any nature whatsoever, arising from or respecting this agreement . . . ." *Id.* at 1332. After a dispute arose between the plaintiffs and CAC, the company filed an arbitration demand alleging various breaches of the parties' franchise agreement. *Id.* The plaintiffs then filed a

lawsuit against CAC and certain of its employees, alleging that they fraudulently induced the plaintiffs to enter into the franchise agreement. *Id.*

The trial court concluded that the broad language of the arbitration clause and public policy required arbitration of the fraudulent-inducement claim. *Id.* at 1334. The court thus compelled the plaintiffs to arbitrate their claims against CAC. *Id.* But the trial court did not compel the plaintiffs to arbitrate their claims against the individual defendants, as they were not signatories to the franchise agreement. *Id.*

On appeal, CAC argued that its employees should be permitted to compel arbitration of the claims asserted against them because CAC was the "real party in interest." *Id.* at 1336. The appellate court rejected this argument, holding that because the Franchise Disclosure Act under which the plaintiffs brought their claims contemplated liability against not only companies but also their officers and directors, CAC was incorrect that it was the only "real party in interest." *Id.*

Two facts distinguish this case from *Vukusich*. First, Griffis agreed in his Form U4 to arbitrate any disputes that may arise not just between him and Wells Fargo, but also between him and "any other person." (ECF No. 6-2, ¶ 5.) Second, FINRA Rule 13200 requires arbitration "between or among . . . Associated Persons." Thus, unlike the plaintiffs in *Vukusich*, Griffis expressly agreed to arbitrate claims against nonsignatories like Dailey. If Griffis were correct that only signatories may compel arbitration, his agreement to arbitrate any dispute between him and "any other person" or any "Associated Person" would be effectively meaningless.

Moreover, "an agreement containing an arbitration clause covers non-signatories under common-law contract and agency principles." *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001). "A non-signatory may invoke the agreement when, under agency

9

or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Id.* Here, Griffis alleges that Wells Fargo "made material representations" through "its agent Kevin Dailey" (ECF No. 1-1, ¶ 53), and Griffis's allegations against Wells Fargo in Count I are identical to his allegations against Dailey in Count II. Thus, even had Griffis not expressly agreed to arbitrate his dispute against Dailey, agency principles permit Dailey to compel arbitration.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to stay these proceedings and compel arbitration is granted. This case is stayed pending arbitration in accordance with 9 U.S.C. § 3. Griffis's motion to lift the stay of discovery is denied as moot.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 3, 2014